**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MELVIN ANDERSON,<br><br>                              Petitioner,<br><br>v.<br><br>DANIEL PARAMO, Warden,<br><br>                              Respondent. | Case No.:  17-cv-1541-AJB (NLS)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF. No. 1]** |

## I.    INTRODUCTION

Petitioner Melvin Anderson ("Petitioner," "Anderson," or "Melvin"), a state prisoner proceeding *pro se* and *in forma pauperis*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his San Diego Superior Court convictions in case number SCS225148. (ECF No. 1 at 2 ("Petition").)[1] Respondent filed an answer, arguing that Petitioner's petition fails for one claim on a procedural bar and on his other claim on the merits, and lodged the court records. (ECF No. 14

---

[1] Due to discrepancies between original and imprinted page numbers, page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the court's electronic case filing system.

("Answer"); ECF No. 15 ("Lodgment").) Petitioner filed a traverse, and the Court took the matter under submission. (ECF No. 16 ("Traverse").) After reviewing the parties' submissions and the lodgments, and for the reasons discussed below, the Court **RECOMMENDS** the Petition be **DENIED**.

## II.    FACTUAL BACKGROUND

The following facts are taken from the California Court of Appeal opinions:[2]

> Melvin James Anderson was sentenced to prison in March 2013 for an aggregate term of 23 years after a jury found him guilty of residential burglary, first degree robbery, assault with a firearm, and possession of a firearm by a felon, and found true firearm enhancement allegations attached to the burglary, robbery, and assault charges, and he admitted he had served three prior prison terms and had a prior conviction that constituted a serious felony and a strike under the Three Strikes law.

(Lodgment No. 21 at 1; *see also* Lodgment No. 13 at 2.)

> At the time of the incident giving rise to the charges in this case, Anderson lived with his cousin, Kellie Thomas, and her three children. Gregory Moore and his girlfriend, Niya Watson, who is a cousin of both Anderson and Thomas, had previously lived with Thomas and her children. Moore and Watson testified that Thomas abused prescription pills, and that Moore occasionally provided Thomas with Vicodin pills that were prescribed for him when they lived together. Thomas sometimes paid Moore money for the Vicodin pills and sometimes paid him for the pills by letting him use her electronic benefit transfer (EBT) card to buy food. When Thomas's mother, Diane Sawyer, found out that Moore was giving Thomas Vicodin, she asked Moore and Watson to move out of Thomas's apartment, and paid them $200 to expedite their move.

> After Moore and Watson moved out of Thomas's apartment, Moore continued to provide Thomas with Vicodin from his prescriptions, and Thomas occasionally paid Moore for the pills by letting him purchase food

---

[2] This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (West 2006); *Slovik v. Yates*, 545 F.3d 1181, 1183 n.1 (9th Cir. 2008); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from those facts, are entitled to statutory presumption of correctness). Here, Petitioner does not raise a challenge to any of these facts.

with her EBT card. Moore testified that he would "front" Thomas the pills and Thomas would pay him with the EBT card "about a week or so later." On March 1, 2012, Thomas met with Moore and Watson at a grocery store across the street from her residence to give them the EBT card as payment for Vicodin that Moore had given her earlier in the week. Thomas agreed to allow Moore to spend $200 on the card for food. Thomas also paid Moore $300 in cash toward an $800 debt for pills that he had given her and money that he and Watson had loaned her. After Thomas bought groceries for her household, she gave Watson the EBT card and told her that she could spend "$200 off the EBT card." Moore would normally "go right to the store" when Thomas let him use her EBT card, and would return the card to Thomas within a couple of hours. However, when Thomas gave Watson the card that day, Moore did not have time to shop because he had a "previous engagement" and "other things to do." Consequently, he and Watson drove home with the EBT card and Thomas walked home.

After Moore and Watson returned to their apartment, Anderson called Watson and asked her if she had Thomas's EBT card. Thomas later sent Moore and Watson several text messages telling them that she, Anderson, and Sawyer were on their way to Moore and Watson's apartment to retrieve the card. Thomas told Moore that they were going to bring him $200 in cash in exchange for the card.

Anderson arrived at Moore and Watson's apartment and knocked on the door. Moore opened the door with the EBT card in his right hand. Anderson said, "Yo, man. I need that card." Moore replied, "Okay, well, where is the $200?" Anderson said that he did not have the money, but would give it to Moore later. Moore told Anderson that he needed to buy food before he returned the card and turned to close the door. Anderson pushed the door open and hit Moore on the head with what appeared to Moore to be a "skull cap," which Moore explained is a "beanie that you put over your skull." The blow caused Moore to lose his balance and stumble. As he stumbled, he saw a gun clip fall out of the cap onto the floor, and saw Anderson pick up the clip. Moore then heard the sound of a clip being inserted into a gun.

Watson testified that she saw the gun clip on the floor and saw Anderson pick up the clip and insert it into a black gun. She yelled at Anderson and told him to get out of her house. In response, Anderson said, "Get the fuck out of my face. Get back. You will get hurt, too." Before he left the apartment, Anderson pushed Watson, pointed the gun at her and said, "I ought to rob you right now."

Medical assistant Shawn Ireland and a doctor were making a house call at an apartment located down the hall from Moore and Watson's apartment

when the altercation between Anderson, Moore, and Watson occurred. Ireland and the doctor heard yelling and screaming coming from down the hall. The doctor told Ireland to "go break that up." Ireland went into the hallway and walked toward Moore and Watson's apartment. As he approached their door, he said something to the effect of, "Hey, hey, guys, calm down." Anderson, who was standing in the doorway, turned around and looked at Ireland. Ireland saw a pistol in Anderson's right hand. He was familiar with guns and recognized the gun in Anderson's hand as a semiautomatic "Glock" type of pistol. Anderson was holding the gun by the barrel with the handle sticking out the backside. When Ireland saw the gun, he backed away from Anderson, returned to his patient's apartment, and called 911. A few minutes later, the police arrived at Moore and Watson's apartment. Moore told the police that he had received his welfare check that day and that Anderson had probably come to his home to rob him.

[] Anderson testified that he lived with his cousin, Thomas, and her three children and was employed as an in-home caregiver. He testified that Thomas was a "sickly person" and is mentally "slow." He helped Thomas by making sure that she shopped for groceries for the children, got the children to school, made it to her medical appointments, and cleaned herself and the children. Thomas's mother, Sawyer, told Anderson in late 2011 that Thomas had a drug problem. Anderson tried to talk to Thomas about the problem and began to watch her more closely. Watson and Thomas told Anderson that Thomas was getting pills from Watson, and Anderson knew that Watson was getting the pills from Moore. Anderson spoke with Moore about providing Thomas with pills. He asked Moore, "Why would you guys do this to your family?" Moore responded, "I need my money. I've got to live too."

After Thomas was hospitalized in December 2011 as a result of a drug overdose, Anderson began monitoring her money. Thomas gave Anderson her bank card and EBT card, but he later returned them to her when he "noticed that she was doing better." However, he continued to monitor her use of the EBT card by asking her for receipts.

The day before the March 1 incident, Sawyer and Anderson became concerned because Thomas was missing and Sawyer discovered that money had been withdrawn from Thomas's bank account from a 7/11 store across the street from Moore and Watson's apartment. Anderson suspected that Moore and Watson were selling drugs to Thomas again. When Thomas came home, Anderson searched her and found Vicodin pills in her pocket. Anderson was upset. He took the pills and Thomas's cards from Thomas, but returned the cards that night.

The next day, Anderson and Sawyer confronted Thomas and asked her

where the money missing from her account and her EBT card were. Thomas said that she had paid bills with the money. She pretended to look for her EBT card for a few minutes, but eventually admitted that Moore and Watson had the card. Anderson "started arguing" with Thomas and expressing disapproval that she had allowed Moore and Watson to take the card. Thomas responded, "Well, she snatched it. It was two of them and just me. What was I going to do?" Sawyer suggested that they go to Moore and Watson's apartment to retrieve the EBT card and told Thomas to "tell them we're coming to get the card." Thomas sent a text message to Moore and Watson while Sawyer, Anderson and Thomas drove to their apartment. Anderson testified that he did not have a gun. He explained that he wore a knife attached to his belt on his right hip, and wore a cell phone holder behind the knife.

Anderson arrived at Moore and Watson's apartment and knocked on the door. When Moore opened the door, he was holding Thomas's EBT card in his hand. Anderson said, "I'm going to need that." Moore turned to Watson and asked her if he should give Moore the card. Watson said, "No, no. Hell no." Anderson reached for the card and Moore held onto it. They both pulled on the card, but Anderson won the "struggle" and left with the card. Anderson testified that he did not hit Moore over the head with a gun or with anything else, and said that he did not own a gun. When Anderson was asked if Moore fell during the struggle, he answered, "I'm not sure what happened when I left. He was kind of, like, hurling towards the bathroom." Anderson added that Moore was not steady on his feet during the struggle and seemed "kind of scared," "slow," and "groggy." When Anderson was shown a photograph of Moore with blood on his head after the incident, he testified that he might have caused Moore to fall because Moore was unstable, but he denied that he had hit Moore on the head.

(Lodgment No. 13 at 3-8.)

## III.  PROCEDURAL BACKGROUND

### A.  Trial Court Proceedings

Matthew Williams ("Mr. Williams") was the deputy district attorney assigned to prosecute the case, and Debbie Kirkwood ("Ms. Kirkwood") served as Petitioner's public defender.  (Lodgment No. 1 at 2.)

Petitioner was initially charged by information on March 7, 2012.  (Lodgment No. 9 at 8-12.)  On May 9, 2012, Petitioner was charged by an amended information with first degree residential burglary (Cal. Penal Code §§ 459-60, 667.5(c)(21)), first degree

robbery (Cal. Penal Code §§ 211, 212.5(a), 12022.53(b)), assault with a firearm (Cal. Penal Code § 245(a)(2)), and being a felon in possession of a firearm (Cal. Penal Code § 29800(a)(1)). (*Id.* at 19-21.) The State also alleged that in the commission or attempted commission of the robbery and assault, Petitioner personally used a firearm (a firearm enhancement under Cal. Penal Code §§ 12022.5(a), 12022.53(b)). (*Id.* at 20.) The State further alleged that Petitioner had served three prison terms (within the meaning of Cal. Penal Code §§ 667.5(b), 668), and that he had a prior conviction which constituted a serious felony (under Cal. Penal Code §§ 667(a)(1), 1192.7(c)) and a strike (under Cal. Penal Code §§ 667(b)-(i), 668, 1170.12). (*Id.* at 22.)

On May 16, 2012, a jury convicted Anderson of all charges and found true the accompanying allegations. (*Id.* at 84-90.) In a bifurcated proceeding, Anderson admitted to the prior convictions. (*Id.* at 268-69.)

On March 19, 2013, the trial court sentenced Petitioner to 23 years in state prison. (*Id.* at 281-82.) There, the trial court sentenced Petitioner to eight years for robbery (a middle term of four years, doubled under the Three Strikes law), ten years for the robbery firearm enhancement, and five years for the prior felony conviction enhancement.[3] (*Id.*)

### B. Direct Appeal

On February 22, 2014, Petitioner filed a notice of appeal. (*See* Lodgment No. 10 at 13.) In his direct appeal, Petitioner claimed that the trial court erred by failing to instruct the jury on Petitioner's meritorious claim of right defense, and by allowing Mr. Williams to impeach him with a 23-year-old prior robbery conviction. (*Id.* at 21-30, 45-55.) Petitioner also claimed that the trial court erred by not excluding impeachment evidence regarding prior gun use, or, in the alternative, that Ms. Kirkwood rendered ineffective assistance of counsel by failing to object to the same. (*Id.* at 31-45.) Further, Petitioner

---

[3] The additional eight year burglary sentence (four-year middle term, doubled) with four year accompanying firearm enhancement was later stayed by the California Court of Appeal, in accordance with Cal. Penal Code § 654's prohibition against multiple punishments for crimes arising out of a single act. (Lodgment No. 13 at 30-31.)

claimed that the cumulative effect of the errors deprived him of due process. (*Id.* at 55-56.) Lastly, Petitioner claimed that his burglary sentence should have been stayed pursuant to Cal. Penal Code § 654. (*Id.* at 56-59.) On March 13, 2015, the California Court of Appeal stayed a portion of Petitioner's sentence,[4] but affirmed the remainder of the judgment. (Lodgment No. 13.)

On April 22, 2015, Petitioner sought review from the California Supreme Court. (Lodgment No. 14.) There, he raised issues regarding the denied claim of right defense, the admission of his 1989 robbery conviction, and Ms. Kirkwood's ineffective assistance as to permitting his prior gun use to be introduced. (*Id.* at 7.) The California Supreme Court issued an order denying review on June 24, 2015. (Lodgment No. 15.)

### C.    State Habeas Proceedings

On January 22, 2016, Petitioner filed a petition for writ of habeas corpus in San Diego County Superior Court. (Lodgment No. 16.) Petitioner argued that Ms. Kirkwood "advised him to reject the plea offer [and] insisted if he lost he would only receive 10 years." (*Id.* at 3.) However, in his habeas petition, he noted that these[5] claims of ineffective assistance of counsel were not made during those initial appeals because "appellate counsel failed to adequately review the record on appeal in lieu of filing above-claims." (*Id.* at 5.) Respondent subsequently filed a return to an order to show cause, arguing that Petitioner was not entitled to relief, (Lodgment No. 17), to which the Petitioner responded with a traverse, (Lodgment No. 18). On December 15, 2016, the superior court denied the habeas petition, pointing to Petitioner's delay in raising the claims and also concluding that Petitioner's claim failed on the merits. (Lodgment No. 19 at 3-5.)

_____

[4] *See supra* note 3.

[5] In contrast, during Petitioner's direct appeals, he claimed that "(1) the trial court erred by failing to instruct the jury on a claim-of-right defense, (2) the court erred by admitting impeachment evidence regarding his prior gun use, [and] (3) the court prejudicially erred in allowing the prosecution to impeach him with 23yrs." (Lodgment No. 16 at 5.)

On February 14, 2017, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal. (Lodgment No. 20.) Petitioner argued that he received ineffective assistance because counsel advised him to reject prosecution's eight-year offer because of a meritorious claim of right defense and advised him that he would receive no more than ten years if convicted. (*Id.* at 29.) Petitioner further argued that he was denied due process at his *Alvernaz*[6] waiver hearing, where he rejected the plea bargain. (*Id.* at 15-19.) On February 28, 2017, the state appellate court denied the habeas petition, concluding that his claims were untimely, and, even if they were not procedurally barred, that they would fail on the merits. (Lodgment No. 21 at 4.)

On June 9, 2017, Petitioner filed a petition for review in the California Supreme Court. (Lodgment No. 22.) He argued that there was confusion in the lower courts as to what questions may be asked during an *Alvernaz* waiver hearing, thus entitling him to review. (*Id.* at 8.) He also reasserted his previous ineffective assistance of counsel and due process claims. (*Id.* at 26-30.) On April 26, 2017, the California Supreme Court summarily denied the petition for review without comment or citation. (Lodgment No. 23.)

### D. Federal Habeas Proceedings

On July 20, 2017, Petitioner then filed the instant federal petition for writ of habeas corpus in this Court. (Petition at 1.)

## IV. SCOPE OF REVIEW

Petitioner's petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state

---

[6] Referring to *In re Alvernaz*, 2 Cal. 4th 924 (1992).

court proceeding.  28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).

A federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable.  *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).  In order to grant relief under § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *See Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts.  *See Bell v. Cone*, 535 U.S. 685, 694 (2002).  A state court need not cite Supreme Court precedent when resolving a habeas corpus claim.  *See Early*, 537 U.S. at 8.  As long as neither the reasoning nor the result of the state court decision contradicts Supreme Court precedent, the decision will not be "contrary to" clearly established federal law.  *Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991).  Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003)

The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case.  *Bell*, 535 U.S. at 694.  The "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer*, 538 U.S. at 75.  "[A] habeas court [must] determine what arguments or theories supported, or could have supported, the state-court decision and then . . . ask whether it is possible

fairminded jurists could disagree that those arguments or theories are inconsistent with a prior decision of [the Supreme Court]." *Harrington v. Richter*, 562 U.S. 86, 88 (2011). This is an extremely deferential review, posing a heavy burden on the Petitioner: to prove that the state court's ruling on the claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

To determine if a decision was based on an unreasonable determination of the facts in light of the evidence presented, the state court's factual findings are presumed correct and this presumption will not be overturned on factual grounds unless this Court finds that the factual determinations were objectively unreasonable in light of the evidence presented in state court. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *see also Rice v. Collins*, 546 U.S. 333, 341-42 (2006) (the fact that "[r]easonable minds reviewing the record might disagree" does not render a decision objectively unreasonable). Petitioner may overcome that presumption only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007). A state court decision is only considered objectively unreasonable when it is "more than incorrect or erroneous." *Williams v. Taylor*, 529 U.S. 362, 407 (2000).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst*, 501 U.S. at 805-06. If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

## V. DISCUSSION

Petitioner raises two claims in his petition: (1) that he was deprived of effective

assistance of counsel, and (2) that he was deprived due process in the *Alvernaz* waiver hearing. (Petition at 12.) Respondent argues that Petitioner's ineffective assistance of counsel claim was reasonably rejected by the appellate court, and that his due process claim is procedurally defaulted. (Answer at 17-26.)

## A.    Ineffective Assistance of Counsel[7]

In Petitioner's first claim, he argues that he was deprived of effective assistance of counsel related to the plea bargain he was offered for the following reasons: (1) Ms. Kirkwood incorrectly advised him that if convicted, he would get a maximum of 10 years; (2) Ms. Kirkwood incorrectly advised him that he had a meritorious claim of right defense; (3) Ms. Kirkwood instructed him to reject the plea bargain with an eight-year stipulated prison term; and (4) Ms. Kirkwood told him that he would win at trial. (Petition at 12-15.) Petitioner contends that he would have accepted the plea bargain but for Kirkwood's erroneous advise. (*Id*. at 14.)

Petitioner raised this ineffective assistance of counsel claim in his state habeas petition to the San Diego County Superior Court. (Lodgment No. 16.) The claim was also presented to and ruled upon by the California Court of Appeals. (Lodgment No. 20.) Petitioner's habeas petition to the state supreme court was summarily denied. (*See*

---

[7] In his petition, Petitioner states that his "imprisonment is unlawful because Melvin was deprived of his rights . . . to effective assistance of counsel before *and during* trial[.]" (Petition at 12. Emphasis added.) However, Petitioner wholly failed to substantively discuss this argument in his petition or traverse, or support it with any facts or argument. Rather, Petitioner focused on the *Alvernaz* hearing and the events surrounding the plea bargain *prior to* trial. Thus, the Court finds that any arguments as to ineffective assistance of counsel *during* trial have been waived and the Court will not address it. *See Martinez-Serrano v. I.N.S.*, 94 F.3d 1256, 1259 (9th Cir. 1996) ("Issues raised in a brief that are not supported by argument are deemed abandoned."); *FDIC v. Garner*, 126 F.3d 1138, 1145 (9th Cir. 1997) ("Appellants present no case law or argument in support of this claim. Accordingly, we deem the argument waived."); *Creech v. Ramirez*, No. 1:99-CV-00224-BLW, 2016 WL 8605324, at *6 (D. Idaho Jan. 29, 2016) (finding that claims with "no particular argument or evidentiary support" are "either forfeited or voluntarily waived").

17-cv-1541-AJB (NLS)

Lodgment No. 22.)  Therefore, this Court "looks through" to the last reasoned state court decision to address Petitioner's claim—*i.e.*, the appellate court decision—and presumes that it provides the basis for the higher court's denial of Petitioner's claim.  *See Ylst*, 501 U.S. at 805-06.

### 1. Legal Standard

The clearly established United States Supreme Court law governing ineffective assistance of counsel ("IAC") claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Baylor v. Estelle*, 94 F.3d 1321, 1323 (9th Cir. 1996) (stating that *Strickland* "has long been clearly established federal law determined by the Supreme Court of the United States").

To prevail on a claim of ineffective assistance of trial counsel in federal court, Petitioner must have first established in state court that his trial counsel's performance was deficient—that it fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 687.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. Second, he must have shown counsel's deficient performance prejudiced the defense, such that the result of the proceeding would have been different absent counsel's errors. *Id*; *see People v. Lucero*, 23 Cal. 4th 692, 728 (2000) ("Prejudice occurs only if the record demonstrates a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.") (internal quotation marks omitted).[8]  Counsel's errors must be so serious that the result of the proceeding was

---

[8] The appropriate inquiry focuses on the adversarial process, not on the Petitioner's relationship with his lawyer:

> If counsel is a reasonably effective advocate, [s]he meets constitutional standards irrespective of h[er] client's evaluation of h[er] performance.  It is for this reason that we attach no weight to either respondent's expression of satisfaction with counsel's performance at the time of his trial, or to his later expression of dissatisfaction.

*United States v. Cronic*, 466 U.S. 648, 657 n.21 (1984) (internal citations omitted).

fundamentally unfair or unreliable.  *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993).
In assessing counsel's performance, the Court employs a strong presumption that counsel
rendered adequate assistance and exercised reasonable professional judgment.
*Strickland*, 466 U.S. at 690.

On federal habeas review, "the question is not whether counsel's actions were
reasonable, [but] whether there is any reasonable argument that counsel satisfied
*Strickland*'s deferential standard."  *Harrington*, 562 U.S.at 105.  The Court need not
address the performance prong if the claim can be resolved on the ground of lack of
sufficient prejudice.  *Strickland*, 466 U.S. at 697.

Effective assistance of counsel also attaches to the decision to accept or reject a
plea bargain.  *Turner v. Calderon*, 281 F.3d 851, 879 (9th Cir. 2002); *see also United
States v. Fuller*, 941 F.2d 993, 995 (9th Cir. 1991) ("Our law has long recognized that a
defendant has the right to assistance of counsel in deciding whether or not to plead
guilty.").  *Strickland*'s two-prong test applies to ineffectiveness claims arising from the
plea process.  *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985).  The first prong assesses not
whether "counsel's advice was right or wrong but . . . whether that advice was within the
range of competence demanded of attorneys in criminal cases."  *Turner*, 281 F.3d at 879
(quotation omitted).  To satisfy the "prejudice" requirement, petitioner must show "but
for counsel's errors, he would have pleaded guilty and would not have insisted on going
to trial."  *Id.*

### 2. Timeliness

As a threshold matter, the Court will briefly address the issue of timeliness because
it was the first ground upon which the California Court of Appeal denied Petitioner's
habeas petition.  The state appellate court stated:

> As the trial court observed, the unexplained delay of nearly three years
> between sentencing and the filing of the habeas corpus petition in the trial
> court bars the claims as untimely. (*In re Reno* (2012) 55 Cal.4th 428, 459; *In
> re Swain* (1949) 34 Cal.2d 300, 302.)

(Lodgment No. 21 at 4.)

A state court finding that a state habeas petition was untimely is generally sufficient grounds to bar the federal habeas petition as well. California's timeliness bar has been found to be an "independent and adequate" state procedural ground barring subsequent habeas relief in federal court. *Walker v. Martin*, 562 U.S. 307, 317 (2011); *Ayala v. Chappell*, 829 F.3d 1081, 1095 (9th Cir. 2016) ("*Walker* holds that California's timeliness rule is an independent and adequate state law ground sufficient to bar federal habeas relief on untimely claims.") (original emphasis omitted). This federal bar applies even if the appellate court found the petition untimely but still went on to address the merits—as the appellate court did here. *Loveland v. Hatcher*, 231 F.3d 640, 643 (9th Cir. 2000) (concluding that federal habeas review was precluded when the state court dismissed the "state habeas petition, independently stated that his petition was procedurally barred because it was untimely and then separately concluded that his claims were without merit").

However, neither party raised this timeliness ground as a procedural bar to the instant claim in the federal habeas petition. Failing to raise a procedural bar as a defense to a claim generally waives it. *Morrison v. Mahoney*, 399 F.3d 1042, 1046-47 (9th Cir. 2005) (stating that, in the habeas context, "a state waives its statute of limitations defense by filing a responsive pleading that fails to affirmatively set forth the defense"); *Vang v. Nevada*, 329 F.3d 1069, 1073 (9th Cir. 2003) (stating that, in the habeas context, procedural default is an affirmative defense, which is waived if not asserted by the state); *Batchelor v. Cupp*, 693 F.2d 859, 864 (9th Cir. 1982).

Moreover, the Court retains the discretion to consider a claim on the merits even if it may be procedurally barred. *Harmon v. Ryan*, 959 F.2d 1457, 1461 (9th Cir. 1992); *see Reed v. Ross*, 468 U.S. 1, 9 (1984) (courts have "uniformly acknowledged that federal courts are empowered under 28 U.S.C. § 2254 to look beyond a state procedural forfeiture and entertain a state prisoner's contention that his constitutional rights have been violated."); *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("[C]ourts are empowered to, and in some cases should, reach the merits of habeas petitions if they are,

on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar.").

Thus, the Court will address the merits of Petitioner's ineffective of counsel claim.[9]

### 3. Merits

After finding the petition untimely, the California Court of Appeal continued to also deny Petitioner's ineffective assistance of counsel claim on the merits:

> Even were the petition not procedurally barred, it would be denied on the merits. To prevail on his claim of ineffective assistance of counsel, Anderson must show his trial counsel's advice to reject the prosecutor's plea offer both fell below an objective standard of reasonableness and also caused him prejudice in that, but for her bad advice, there is a reasonable probability he would have accepted the offer and the trial court would have approved it. (*Lafler v. Cooper* (2012) 566 U.S. 156, 162-164; *In re Alvernaz* (1992) 2 Cal.4th 924, 936-941.) "In this context, a defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she would have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence." (*In re Alvernaz*, supra, at p. 938.) As the trial court noted, the transcript of the hearing at which Anderson rejected the prosecutor's plea offer—the only objective evidence in the record—completely undermines his claim that he decided to go to trial because counsel had misinformed him he was facing only 10 years in prison if convicted. At the hearing, both the prosecutor and the trial court stated the maximum exposure was 30 years in prison, and Anderson said he understood that when asked by the court. He also said he was aware of the prosecutor's offer of a stipulated eight-year prison sentence in exchange for a guilty plea,

---

[9] Similarly, neither party raises any potential timeliness issue with the federal habeas petition. AEDPA imposes a one year period of limitations on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). While this statute of limitations is subject to statutory tolling with a "properly filed application for State post-conviction or other collateral review," 28 U.S.C. § 2244(d)(2), an untimely filed state habeas petition does not toll the statute of limitations. *Pace v. DiGuglielmo*, 544 U.S. 408, 412-13 (2005) (a state post-conviction petition that a state court rejects as untimely is not considered "properly filed" such that it tolls the federal statute of limitations). Regardless, neither party raised this issue so the Court will not rule on it. *Day v. McDonough*, 547 U.S. 198, 209 (2006) ("[D]istrict courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition.").

had discussed the offer with counsel, and had decided to reject the offer and go to trial. Anderson's related claim that counsel misadvised him about the strength of his claim of-right defense also fails. The only evidentiary support for this claim is Anderson's own declaration, which "is insufficiently corroborated by independent, objective evidence." (*Id.* at p. 945.) The declarations of Anderson's obviously biased family members and friends say nothing about this defense. Those witnesses state only in very vague terms that counsel advised Anderson not to accept the plea offer because he had a good chance of prevailing at trial, and four of them suspiciously state they heard counsel give that advice five days after the hearing at which Anderson rejected the plea offer. Moreover, Anderson's claim is contradicted by the declaration of his counsel, who stated she advised Anderson the claim-of-right defense was not worth taking to trial and he should accept the plea offer. Based on "an independent review of the record," this court concludes Anderson has not "established by a preponderance of substantial, credible evidence" that his counsel provided constitutionally ineffective assistance. (*Id.* at pp. 944-945.)

(Lodgment No. 21 at 4.)

Here, for the reasons below, the Court finds that the state appellate court's decision was not contrary to or an unreasonable application of established federal law and did not reflect an unreasonable determination of the facts in light of the evidence presented. Because Petitioner presents several basis for the IAC claim, the Court will address each in turn.

<u>First</u>, Petitioner claims that Ms. Kirkwood mistakenly told him that he only faced a maximum of 10 years in prison if convicted. In support of this claim, in his state habeas petition, Petitioner submitted a declaration stating that Ms. Kirkwood told him that "even if she lost the case [Petitioner] wouldn't get over 10 years." (Lodgment No. 16 at 12; *see also* Lodgment No. 18 at 4.)

The appellate court found that this statement from Petitioner—which was the only evidence he submitted in support of this specific claim—was not sufficient to overcome the objective evidence to the contrary. Specifically, the appellate court pointed to Petitioner's rejection of the prosecution's plea offer on the record, where the following exchange took place:

**THE COURT**: You have any objection to me inquiring of him along the lines of *People v. Alvern[a]z*?

**MS. KIRKWOOD**: No, your Honor.

**THE COURT**: Mr. Anderson, let me talk to you personally about what you just heard. I sometimes feel uncomfortable having this conversation because I am not in any way trying to pressure you, trying to nudge you in one way or the other. It's your call in consultation with your attorney. So please don't take anything I'm saying now with any indication of what I think you should do, any, you know, arm twisting or anything. Understood?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: I want you to have the information that was just given to me so you understand that and you can put that in your calculations. The district attorney wants me to go forward on a new amended information this morning, arraign you on it, and he's added some prior convictions of yours to it and he's changed one of the allegations to not only simply "uses a firearm" but "uses a firearm during a robbery" which is a mandatory 10-year sentence enhancement to any sentence. So that is what is happening. According to his calculations, if we go forward in trial on that and you're convicted on all counts and all priors are found to be true, at sentencing you're facing a potential sentence of 30 years. Understood?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Before we go forward on that, Mr. Williams has made an offer on the original complaint, that's the only one now in effect until I arraign you on the new one, and has offered you a plea bargain if you plead guilty to the robbery and admit to the use of a gun and stipulate to an eight-year prison sentence. That's the offer of the district attorney right now. It will expire if you don't accept it, frankly. I presume you've had these conversations. I don't want you to tell me about your conversations. I presume you've discussed these issues with your attorney.

**THE WITNESS**: Yes, sir.

**THE COURT**: You're aware of the district attorney's offer of eight years?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Is it your intention to refuse the offer and go forward in trial?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Okay, I'll note that Mr. Anderson has been advised of the district attorney's offer on the original complaint and has consulted with his attorney about it and has advised the court that he is turning it down and willing to go forward on trial.

(Lodgment No. 1 at 6-8.)

After Petitioner rejected the plea and the court moved onto other matters, Ms. Kirkwood herself repeated that Petitioner faced a 30-year maximum in open court and in the presence of Petitioner. In the hearing for motions *in limine* with Petitioner present, in the context of whether Petitioner's prior convictions could be used as propensity evidence, Ms. Kirkwood stated "Mr. Anderson is facing 30 years in prison for this. We have to make sure he receives a fair trial." (Lodgment No. 1 at 34.) Later on, Ms. Kirkwood again repeated "[w]e need to assure that Mr. Anderson receives a fair trial acknowledging that he is looking at 30 years on this case." (*Id.* at 46.) Petitioner did not raise an issue with him misunderstanding his maximum sentence at this time either.

On this factual record, the appellate court was not objectively unreasonable in rejecting Petitioner's claim that counsel was ineffective because she misinformed him of the sentence he was facing. The appellate court pointed out that the only "objective" evidence on the record—the hearing transcript—showed that the prosecutor and the trial court stated the maximum exposure was 30 years in prison, and Petitioner said he understood that when asked by the court. In his state habeas brief, Petitioner argued that his statements on the record that he understood the consequences of going to trial was actually based on Ms. Kirkwood's advice about 10 years, not 30 years. (Lodgment No. 18 at 9.) However, courts are not required to give weight to self-serving statements made years after the fact. *See Turner*, 281 F.3d at 881 (rejecting petitioner's "self-serving statement, made years later," that his counsel told him he would not face the death penalty when petitioner sat through charging information, which included the possible penalty of death, as insufficient to establish he was unaware of the possible punishment).

Second, Petitioner contends that Ms. Kirkwood rendered inefficient assistance because she assured him that he had a meritorious claim of right defense. Petitioner argues that the claim of right defense clearly did not apply to his situation, because it "does not apply if the claim arises from an activity known to be illegal or known by the defendant to be illegal. . . . [and here,] the EBT card was being used in criminal activity." (Petition at 14-15.)

The appellate court weighed the evidence on both sides. In support of Petitioner's claim, he had his declaration which stated "Ms. Kirkwood told me that my good faith believe [sic] that I had legal right to retrieve the card from Gregory Moore whom was wrongfully holding the card would be my defense to the crime I was charge [sic]." (Lodgment 16 at 12.) In addition, he stated "Still I worry and consultant [sic] with a family friend. He told me that O.J. Simpson try the same defense and lost his case with paid attorneys." (*Id.*) In contrast, Ms. Kirkwood's declaration, submitted to the state court, stated:

> After Anderson made clear to me that he was not going to plead guilty, I formulated the claim-of-right defense based on the available facts. I believed that arguing Anderson had a right to the property taken from the victim was Anderson's best defense under the circumstances. As a zealous advocate, I also argued Anderson's theory that his cellular telephone carrier and knife looked like a gun. I did not think these defenses were worth the risk of going to trial, and I explained my candid assessment of these defense theories to Anderson. However, Anderson still wanted to go to trial.

(Lodgment No. 17 at 56.). None of the other declarations submitted by Petitioner included any statements specific to this defense. Balancing the two dueling declarations from Petitioner and Ms. Kirkwood, the appellate court found that Petitioner's own self-serving, uncorroborated declaration was insufficient evidence that Ms. Kirkwood assured him he had a meritorious claim of right defense.

The Court does not find this conclusion to be contrary to or an unreasonable application of *Strickland* or an unreasonable interpretation of the evidence. Self-serving statements, made after the fact, are often insufficient to overcome the presumption of

validity accorded to state convictions. *See Turner*, 281 F.3d at 881; *United States v. Allen*, 153 F.3d 1037, 1041 (9th Cir. 1998) ("[S]elf-serving statements by a defendant that his conviction was constitutionally infirm are insufficient to overcome the presumption of regularity accorded state convictions.").

Moreover, even if Ms. Kirkwood did make statements to Petitioner suggesting that he had a strong claim of right defense, this would not be sufficient to establish ineffective assistance of counsel. Whether or not the claim of right defense applied to Petitioner's situation was not so clear that his counsel's pursuit of the defense would have placed her "outside the range of competence demanded of attorneys in criminal cases." *Turner*, 281 F.3d at 879.

During trial, after the defense rested and prosecution declined to introduce rebuttal evidence, Ms. Kirkwood requested the claim of right instruction.[10] (Lodgment No. 4 at 62-63.) Ms. Kirkwood argued that Petitioner believed he had a *bona fide* belief to a claim of right to the EBT card. (*Id.* at 63.) Ms. Kirkwood differentiated Petitioner's factual situation from cases cited by the State, arguing that Petitioner was not engaged in "notorious illegal activity" such that the defense would be inapplicable. (*Id.* at 63-65.) In a lengthy debate, the trial court debated whether to give the instruction, questioning Ms. Kirkwood regarding how the defense applies when the property was not technically Petitioner's but belonged to another (*i.e.*, Kellie Thomas). (*Id.* at 65-91.) Eventually,

---

[10] Specifically, she requested California Criminal Jury Instruction 1863, which reads in relevant part:

> If the defendant obtained property under a claim of right, (he/she) did not have the intent required for the crime of (theft/ [or] robbery). The defendant obtained property under a claim of right if (he/she) believed in good faith that (he/she) had a right to the specific property or a specific amount of money, and (he/she) openly took it. . . . The claim-of-right defense does not apply if the claim arose from an activity commonly known to be illegal or known by the defendant to be illegal.

CALCRIM 1863.

after noting that he "struggled" with the issue, the trial judge denied her request to give the instruction. (*Id.* at 88-91.)

This record shows that the claim had some merit, as it was not summarily dismissed as frivolous. Indeed, Petitioner himself argued that the claim of right defense *was* meritorious, in his motions for new trial and direct appeals. (Lodgment No. 9 at 150-53 (arguing that trial court should have given claim of right instruction because it was supported by the evidence); Lodgment No. 10 at 18-19, 25-27 (arguing same on direct appeal).[11]) Given this record, Petitioner's claim that Ms. Kirkwood's pursuit of this defense arose to ineffective assistance of counsel does not stand.

<u>Third</u>, turning to the last two arguments petitioner makes—that Ms. Kirkwood erred in telling him that he would prevail at trial and that she instructed him to not accept the plea bargain—neither of these are sufficient to grant Petitioner habeas relief for an IAC claim either.

The state appellate court reviewed the evidence submitted by the parties on this issue. Petitioner submitted a declaration stating that Ms. Kirkwood told him "not to worry we would win the case" and advised him to decline the eight year plea bargain. (Lodgment No. 16 at 12.) He submitted a declaration from Gary L. Peavy, who stated that he asked Ms. Kirkwood "you don't believe he should have took the deal" and she responded "No, he has a very good chance of success." (*Id.* at 14.) He submitted a declaration from Da'Lundra Anderson, which stated:

> On several occasions while accompanying Melvin Anderson to court proceedings [I] spoke with Mrs. Kirkwood in regards of his case. Mrs. Kirkwood expressed her desire to take the case to trial and to reject the plea

_____

[11] The court of appeal rejected Petitioner's argument that he was acting as Thomas's agent in retrieving her rightful property, holding that the trial court did not err in refusing to give the claim of right instruction because there is a "strong public policy against forcible self-help" of Petitioner taking the property for Thomas. (Lodgment No. 13 at 10-13.) Thus, court of appeal rejected this claim on a different basis than the trial court. This again shows that whether or not the defense applied was not a simple matter of black letter law and required a nuanced application.

deal because she felt there wasn't enough to convict him and she could win the case. Melvin and I went back and forth on making this decision on what should he do and Mrs. Kirkwood kept assuring us to not worry and of course we believed her since she was his attorney.

(*Id.* at 16.) He also submitted declarations from Kenya Dye, Gwendolyn D. White, Timmy Anderson, and Jacqueline Anderson, which all identically stated "While in the hallway of the court I heard [Petitioner's] attorney Ms. Kirkwood tell [him] don't take the plea bargain because she believed it was no doubt[] that she would prevail during trial." (*Id.* at 18, 20, 22, 24.)

On the other hand, Ms. Kirkwood submitted a declaration, stating that she "never guaranteed any outcome at trial" because "jury trials are inherently unpredictable" so it was her "standard practice to never guarantee outcomes at trial." (Lodgment No. 17 at 56.) She stated further that she was "pessimistic about [Petitioner's] chances at trial" and never stated to Petitioner's declarants that he had a good chance at trial. (*Id.*) She also stated that she "never counselled [Petitioner] to reject" the plea deal and instead "counselled Petitioner to plead guilty." (*Id.* at 57.)

In weighing this evidence, the state appellate court found that Petitioner's declarants were "biased family members" and noted that four of them "suspiciously" stated that they overheard Ms. Kirkwood telling Petitioner to reject the plea bargain five days *after* the hearing at which Petitioner already rejected the plea offer. The court weighed these declarations against the contradictory statements submitted by Ms. Kirkwood, ultimately finding that the evidence was insufficient to establish an IAC claim. To obtain habeas relief, Petitioner must show that the state court's factual conclusion was more than "incorrect or erroneous" or that "reasonable minds reviewing the record might disagree"—Petitioner must show that the conclusion was "objectively unreasonable." *Williams*, 529 U.S. at 407; *Rice*, 546 U.S. at 341-42. Under this deferential review, the Court cannot say that the state appellate court's conclusion was "objectively unreasonable." The state appellate court reviewed the evidence and gave reasons for discounting certain declarations.

The Court also does not find that the state court's conclusion was contrary to or an unreasonable application of established Supreme Court law. "[A]n erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." *Lafler v. Cooper*, 566 U.S. 156, 174 (2012). A "defense attorney's simple misjudgment as to the strength of the prosecution's case, the chances of acquittal, or the sentence a defendant is likely to receive upon conviction, among other matters involving the exercise of counsel's judgment, will not, without more, give rise to a claim of ineffective assistance of counsel." *In re Alvernaz*, 2 Cal. 4th at 936. In other words, while the attorney must give the client accurate information—such as the terms of the plea deal offered or the maximum sentence he faces or issues of black letter law—the same does not extend to opinions or advice. The attorney must only provide information such that the defendant can "make an intelligent decision about an available plea bargain." *Perez v. Rosario*, 294 F. Supp. 2d 1125, 1139 (N.D. Cal. 2003) ("While counsel is not required to accurately predict the outcome of a trial, he is required to provide the defendant with the tools needed to make an intelligent decision about an available plea bargain.").

As discussed above, the Court finds that Petitioner has not established that he was told wrong information regarding the maximum sentence he faced and that Ms. Kirkwood acted outside the accepted realm of competence in asserting the claim of right defense. Armed with that information, his decision to accept or reject the plea bargain was his own to make. Thus, this case is not unlike others where no ineffective assistance of counsel was found. For example, in *Turner v. Calderon*, the court found no legal basis for petitioner's IAC claim where petitioner argued that he had a right to "an accurate prediction of the outcome of his case" or that "counsel had an obligation to strongly recommend the acceptance or rejection of a plea offer." 281 F.3d at 881. The court noted that "[c]ounsel cannot be required to accurately predict what the jury or court might find, but he can be required to give the defendant the tools he needs to make an intelligent decision." *Id.* Finding that counsel in *Turner* accurately conveyed to the petitioner the terms of the plea offer and that is case could result in a death sentence, the court found

that counsel satisfied his obligation. *Id.* Similarly, in *Van Wyk v. Beard*, the petitioner argued that his counsel "made a prediction about what was likely to happen, and that prediction turned out to be wrong." No. SACV1501257BROKES, 2016 WL 3381283, at *9-10 (C.D. Cal. Mar. 14, 2016). The court found the advice from counsel was "based on an erroneous strategic prediction, not an incorrect legal rule." *Id.* Such advice was not a basis for an IAC claim. *See also Roberson v. Adams*, 170 F. App'x 462, 464 (9th Cir. 2006) (rejecting IAC claim where attorney advised client that "she believed she had a triable case and because she also believed that a 13-year sentence was too high"). Errors in counsel's judgment that turn out to be mistaken cannot be faulted after the fact as the basis for an IAC claim. *See Turner*, 281 F.3d at 851 ("That counsel and Turner chose to proceed to trial based on counsel's defense strategy and presumably sincere prediction that the jury would not award a sentence of death, does not demonstrate that Turner was not fully advised of his options. Trial counsel was not constitutionally defective because he lacked a crystal ball."); *Roberson*, 170 F. App'x 462, 464 (9th Cir. 2006) ("In hindsight, counsel's advice appears to have been mistaken. Whether an attorney's advice constituted ineffective assistance of counsel, however, must be determined on the basis of the situation as the attorney saw it when she gave the advice and not on the basis of a hindsight analysis of the correctness of that advice.").

Finally, Petitioner argues that his case is like *Lafler v. Cooper*, 566 U.S. 156 (2012), and *Missouri v. Frye*, 566 U.S. 134 (2012), because Ms. Kirkwood gave him advice that turned out to be wrong about his probability of success at trial and to not accept the plea bargain. Petitioner's reliance on these cases is misplaced. In *Lafler*, counsel told petitioner that he could not be convicted for assault with intent to murder because he shot the victim below the waist. 566 U.S. at 174. This amounted to a statement of "an incorrect legal rule." In *Frye*, counsel wholly failed to communicate the plea deal to petitioner before it expired. 566 U.S. at 134. For the reasons discussed above, neither of these cases are factually applicable to Petitioner's situation here.

Petitioner also fails to provide support for his claim that he would have accepted

the plea bargain but for Ms. Kirkwood's advice.  This is a required showing under *Strickland*—to show that counsel's deficient performance prejudiced the defense, such that the result of the proceeding would have been different absent counsel's errors.  None of the third party declarations Petitioner submitted in support of his petition stated that Petitioner would have taken the plea bargain but for Ms. Kirkwood's advice.  A declaration from Petitioner stating that he was prejudiced is not itself sufficient; it must be accompanied by some corroborating evidence.  *In re Alvernaz*, 2 Cal. 4th at 938 ("A defendant's self-serving statement-after trial, conviction, and sentence that with competent advice he or she would have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence."); *see also Belton v. Knipp*, No. C 12-03582 BLF (PR), 2014 WL 3345793, at *14 (N.D. Cal. June 27, 2014).

Accordingly, after due consideration of the parties' arguments, the Court recommends that Petitioner's petition as to his IAC claim be **DENIED**.

## B.    Due Process

In Petitioner's second claim, Petitioner states that he was deprived due process in his *Alvernaz* waiver hearing, where he rejected the plea bargain at issue.  (Petition at 12.)  Respondent argues that Petitioner's due process claim is procedurally barred as untimely, because the issue was raised three years after sentencing.  (Answer at 17.)  Petitioner contends that he did not know his rights had been violated, nor that there was a legal procedure to raise a due process claim, which should toll the statute of limitations. (Traverse at 13.)

### 1.    Procedural Bar

The state appellate court, in denying the habeas petition, reiterated that Petitioner's due process claim regarding his *Alvernaz* hearing was not only untimely, but also "further barred because it could have been raised on [direct] appeal, but was not."  (Lodgment No. 21 at 4.)  This is the basis that Respondent challenges Petitioner's due process claim. (Answer at 17-18.)  Petitioner contends that his due process claim is not procedurally

barred because he did not know the claim was litigable until much later, due to ineffective assistance of counsel. (Traverse at 13.).

"[H]abeas corpus cannot serve as a substitute for an appeal." *In re Dixon*, 41 Cal. 2d 756, 759 (1953). In California, "a convicted defendant desiring to bring claims in a state habeas petition, must, if possible, have pursued the claims on direct appeal from his conviction." *Park v. California*, 202 F.3d 1146, 1151 (9th Cir. 2000) (calling this requirement the "*Dixon* rule") (citing *In re Dixon*, 41 Cal. 2d at 759); *accord Johnson v. Lee*, 136 S. Ct. 1802 (May 31, 2016) (per curiam) (noting that it is a ubiquitous rule across the country). However, the California state court would get to the merits of a claim if one of four exceptions applied: "(1) fundamental constitutional error, (2) a lack of fundamental jurisdiction by the trial court over the petitioner, (3) the trial court's acting in excess of jurisdiction, and (4) an intervening change in the law." *Park*, 202 F.3d at 1151 (internal quotation marks omitted) (citing *Fields v. Calderon*, 125 F.3d 757, 760 (9th Cir. 1997)).

Federal habeas review is barred when a California defendant procedurally defaults his claim under *Dixon* by raising it for the first time on state collateral review if it could have been raised on direct review. *Johnson*, 136 S. Ct. at 1802 (holding that the *Dixon* procedural bar is adequate to bar federal habeas review). A district court may, however, reach the merits if the Petitioner can "demonstrate cause and prejudice or a fundamental miscarriage of justice." *Park*, 202 F.3d at 1150.

Here, Petitioner contends that his appellate counsel was ineffective for failing to raise the issue on direct appeal. (Traverse at 13; *see* Lodgment No. 16 at 5 ("appellate counsel failed to adequately review the record on appeal").) Petitioner argues that he "never knew that there was a legal procedure or basis to raise the claim that he had been

denied due process[,]"[12] because of his treatment at the Enhanced Outpatient Program ("EOP"),[13] and thus did not tell his attorney to raise the issue. (Traverse at 13.) The Court imputes that Petitioner essentially makes two arguments. First, that the ineffective assistance of counsel qualified as the "fundamental constitutional error" exception under *Dixon* and so his claim should not be considered procedurally defaulted. Second, that even if his claim was procedurally defaulted, the ineffective assistance of counsel and his own lack of legal knowledge and mental status constitute cause under the cause and prejudice standard and this Court should review the merits on federal habeas.

Ineffective assistance of counsel falls within "fundamental constitutional error" to constitute an exception to the *Dixon* bar. *See Garner v. Small*, No. CV 09-9332 SVW JC, 2011 WL 1584062, at *7 (C.D. Cal. Jan. 7, 2011) (citing *In re Robbins*, 18 Cal. 4th 770, 814 n.34 (1998)). Similarly, ineffective assistance of counsel can also qualify as sufficient "cause" to overcome a state's procedural bar rule. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) ("in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review will suffice" to excuse procedural default.); *see Martinez v. Ryan*, 566 U.S. 1, 8-9 (2012); *Loveland*, 231 F.3d at 644. "Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution." *Edwards*, 529 U.S. at 451. Indeed, "the mere fact that prior counsel omitted a particular nonfrivolous claim, however, is not in itself sufficient to establish prior counsel was incompetent." *In re Reno*, 55 Cal. 4th

---

[12] However, evidence exists to the contrary; the Court notes that Petitioner raised a due process claim (unrelated to the one at issue here) in his direct appeal. (Lodgment No. 10 at 55-56.)

[13] There are three levels of mental health services care at Richard J. Donovan Correctional Facility: Enhanced Outpatient Program is the second level, and is for inmates who have difficulty adjusting to living in the prison's general population, but who are not so gravely disabled that they require inpatient care. California Dep't of Corrections & Rehabilitation, *Richard J. Donovan Correctional Facility Psychology Internship Handbook,* at 4 (2018-2019), https://cchcs.ca.gov/wp-content/uploads/sites/60/2017/12/RJDPsychologyInternshipHandbook.pdf.

428, 464 (2012). Petitioner has the burden to show that an exception to *Dixon* applies or that he has met the cause and prejudice requirement. *See Roevekamp v. Choates*, No. CV 12-3845-CAS CW, 2013 WL 2456615, at *3 (C.D. Cal. June 5, 2013); *Giang Kien Huynh v. Walker*, No. EDCV 09-1288-R CW, 2013 WL 5934016, at *19 (C.D. Cal. Nov. 1, 2013).

Here, Petitioner fails to meet his burden. Stating only that appellate counsel failed to adequately review the record, without more, is not sufficient to establish ineffective assistance of counsel. *See, e.g.*, *United States v. Gevock*, No. 211CR526JAMEFBP, 2016 WL 4209516, at *7 (E.D. Cal. Aug. 9, 2016) ("[V]ague allegations" that "his [] counsel did not review evidence or discovery with him" are "insufficient to support a claim of ineffective assistance of counsel."); *United States v. Park*, No. CRS-02-0133 LKK DADP, 2009 WL 3806232, at *4 (E.D. Cal. Nov. 12, 2009) ("[V]ague allegation" that counsel "failed to perform effective legal services" are insufficient to excuse tolling.). Even if counsel should have brought this claim on direct appeal because it had some merit—which, as the Court explains below, it does not—failure to bring a particular nonfrivolous claim does not alone constitute ineffective assistance, cognizable under the Federal Constitution. *In re Reno*, 55 Cal. 4th at 464.

The other reason that Petitioner posits—his own ignorance of the law—is insufficient to establish cause. *See Vansickel v. White*, 166 F.3d 953, 958 (9th Cir. 1999) ("Attorney inadvertence or ignorance of the law does not establish cause for a procedural default.") (citing *Murray v. Carrier*, 477 U.S. 478, 486-87 (1986)); *Thiessen v. Knipp*, No. 2:13-CV-0722 JAM GGH, 2016 WL 3512300, at *8 (E.D. Cal. June 28, 2016) ("ignorance of law" not sufficient reason to excuse procedural default). Furthermore, Petitioner's status as an EOP patient does not present adequate cause either. *Schneider v. McDaniel*, 674 F.3d 1144, 1153-1154 (9th Cir. 2012) ("[A] *pro se* petitioner's mental condition cannot serve as cause for a procedural default, at least when the petitioner on his own or with assistance remains able to apply for post-conviction relief to a state court.") (internal quotation marks omitted); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th

Cir. 1988) ("Petitioner's arguments concerning his mental condition and that he relied upon incompetent 'jailhouse lawyers' do not constitute cause.").

Accordingly, the Court holds that Petitioner's due process claim relating to his *Alvernaz* waiver hearing is procedurally barred under *Dixon* and Petitioner has failed to meet his burden to establish cause and prejudice.[14]

### 2. Merits

Regardless, for completeness, the Court will briefly address the merits of Petitioner's due process claim. Even if Petitioner's due process claim was not procedurally barred, it would fail on the merits.

Petitioner argues that he "was denied a sufficient *Alvernaz* waiver hearing because the hearing never determined what his attorney advised him regarding the exposure he faced; what he was advised the offer was and what he was advised as to taking the prosecution offer." (Lodgment No. 18 at 9.) Petitioner contends that the trial court did not ask Ms. Kirkwood "what she advised Petitioner as to his exposure, the offer, and whether he should take the offer[,]" thus constituting a violation of Petitioner's due process rights. (Lodgment No. 18 at 9-10.)

This Court liberally construes Petitioner's contentions[15] as arguing that there was a procedural due process violation, that he did not have fair notice or opportunity to be heard. To obtain relief on a procedural due process claim, Petitioner must have established "(1) a liberty or property interest protected by the Constitution; (2) a

───────────────────

[14] In addition, the Court notes that Petitioner's due process claim was not only not addressed in direct appeal, but also is missing from his state habeas petition; it was not until his traverse, (Lodgment No. 18 at 9), when he raised the issue for the first time. As such, the Superior Court did not address any alleged due process violation in its decision to deny the petition. (Lodgment No. 19 at 3 (noting that the record of the *Alvernaz* hearing refutes Petitioner's contention that his attorney advised him that he faced a ten-year maximum, but never mentioning the due process concerns of the hearing itself).)

[15] *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (reasoning that *pro se* pleadings are liberally construed).

deprivation of the interest by the government; and (3) lack of process." *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (internal quotation marks omitted). Even with this Court's attempts to liberally construe Petitioner's argument, he has not overcome his burden: the record is clear that Petitioner's due process rights were not violated at his *Alvernaz* waiver hearing.

The purpose of an *Alvernaz* waiver hearing is to ensure that the defendant received effective assistance of counsel during the pre-trial stages, namely plea-negotiations, by correctly and accurately communicating the prosecution's offer to the defendant. *See generally In re Alvernaz*, 2 Cal. 4th at 928 (holding that if a defendant demonstrates with objective evidence that ineffective representation at the pretrial stage of a criminal proceeding caused him reject a plea bargain, he has been deprived of the effective assistance of counsel). This *Alvernaz* hearing avoids any later confusion and ensures that the record reflects that the defendant knew (1) the terms of the plea bargain offered, (2) how to resolve the case via the available plea bargain, and (3) what could happen if he proceeded to trial. Here, the *Alvernaz* waiver hearing fulfilled its purpose; thus Petitioner was not denied due process.

During the *Alvernaz* hearing, the court addressed Petitioner directly, stating: "[I]f we go forward in trial on that and you're convicted on all counts and all the priors found to be true, at sentencing you're facing a potential sentence of 30 years." (Lodgment No. 1 at 7.) When the court asked Petitioner if he understood, Petitioner replied, "Yes, sir." (*Id.*) The court then explained the plea bargain currently on the table:

> Mr. Williams has made an offer on the original complaint, that's the one now in effect until I arraign you on the new one, and has offered you a plea bargain if you plead guilty to the robbery and admit to the use of a gun and stipulate to an eight-year prison sentence. That's the offer of the district attorney right now. It will expire if you don't accept it, frankly.

(*Id.* at 7-8.) When asked by the court if he was aware of "the district attorney's offer of eight years[,]" Petitioner responded with, "Yes, sir." (*Id.* at 8.)

In the hearing, the court also sought to ensure that Petitioner had discussed the plea

bargain with his counsel: "I presume you've had these conversations. I don't want you to tell me about your conversations. I presume you've discussed these issues with your attorney," to which Petitioner responded, "Yes, sir." (*Id.* at 8.) Thus, on this record, Petitioner advised the court that he had discussed the plea bargain with his attorney[16] and that it was his intention to refuse the offer and go forward with trial. (*Id.* at 8.)

Petitioner appears to argue that this exchange was insufficient and the court should have inquired into what he was advised by his counsel. The Court disagrees that such questions are required in an *Alvernaz* hearing, especially since such questions may invade the attorney-client privilege. The trial court in fact recognized this—the judge asked Petitioner only whether he discussed the plea bargain with his counsel but specifically cautioned him not to divulge the contents of those discussions. Petitioner fails to cite any authority suggesting that such questioning is required for a sufficient *Alvernaz* hearing.

In alleging violation of his due process rights, Petitioner provides no objective evidence to overcome the overwhelming evidence in the record to the contrary. *In re Alvernaz*, 2 Cal. 4th at 938. As the trial court noted in responding to Petitioner's motion for new trial:

> It was very, very plain. . . . [Petitioner] is not a kid. He and I had a straight-up conversation and he told me 'yes, sir, I want to go to trial.' So I cannot find, here, ineffective assistance of counsel or confusion that resulted in him turning down an offer that now, facing the sentence he is facing today, perhaps he should have taken.

(Lodgment No. 8 at 20-21.) The court in *Alvernaz* stated that "a reviewing court can take

---

[16] In his state court habeas traverse, Petitioner alleged that when the trial court cautioned him against revealing attorney-client privileged information, "he thought [that meant] he could not tell the court what he had been told by his attorney[,]" when asked if they had discussed the potential sentence. (Lodgment No. 18 at 8.) Petitioner alleges that though he answered affirmatively that he understood the potential consequences of going to trial, he actually was basing his choice on Kirkwood's advice about his maximum exposure of 10 years. (Lodgment No. 18 at 9.) As discussed below, Petitioner's assertions are not enough to succeed with his claim.

judicial notice of trial court proceedings, including a defendant's 'trial stance.'" *Buenrosto v. Spearman*, No. 14-CV-3166-LHK, 2015 WL 2251063, at *6 n.5 (N.D. Cal. May 13, 2015) (citing *In re Alvernaz*, 2 Cal. 4th at 940). Here, that stance, as expressed to the court, was that Petitioner was advised adequately by Ms. Kirkwood regarding the plea bargain, and decided on his own volition to reject the plea bargain and go to trial. (*See* Lodgment No. 1 at 8.) Thus, were the Court to reach the merits, this claim would still fail.

Accordingly, the Court also recommends that Petitioner's petition as to his due process claim be **DENIED**.

## VI. CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Anthony J. Battaglia under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. In addition, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **November 16, 2018**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties no later than **December 7, 2018**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated: October 30, 2018

*Nita L. Stormes*

Hon. Nita L. Stormes
United States Magistrate Judge